## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Douglas Dean Cherrone, | |
| Plaintiff, | Case No. 18-cv-8505 |
| v. | Judge Mary M. Rowland |
| City of Morris, a municipal corporation, Tristan A. Borzick, Monty Allbert, Jason Cory, | |
| Defendants. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Douglas Dean Cherrone ("Cherrone") brings suit pursuant to 42 U.S.C. § 1983 against three officers of the Morris Police Department: Tristan A. Borzick ("Officer Borzick"), Monty Allbert ("Sgt. Allbert"), and Jason Cory ("Officer Cory," together "Defendants"). Cherrone alleges Defendants used excessive force when arresting him in violation of his Fourth Amendment rights. He also brings a state law claim of battery. The municipal corporation of Morris is no longer a party, except for purposes of indemnification. (Dkt. 14). For the reasons stated below, Defendants' amended motion for summary judgment (Dkt. 66) is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such

1

that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [draws] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (*citing Anderson*, 477 U.S. at 255). The Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*. (citation omitted).

## BACKGROUND

Cherrone lived at 616 West Avenue in Morris with his girlfriend Stacy Dalton ("Dalton") in January of 2018.[1] (Dkt. 73, ¶¶ 1, 6). On the evening of January 2, 2018,

---

[1] Unless otherwise noted, the facts in this section come from the parties' Rule 56.1 Statements of Undisputed Material Facts. Where the party opponent's response is cited (Dkts. 73 & 76) the Court

Cherrone and Dalton had a heated argument. (Dkt. 73, ¶ 9). Cherrone and Dalton each struck the other in the head and Cherrone left the residence. (Dkt. 73, ¶ 10; Dkt. 76, ¶ 68). Once Cherrone was gone Dalton called the Morris police, and Officer Mark Vanderploeg (not named in this suit) was dispatched to 616 West Avenue. (Dkt. 73, ¶ 11). Dalton told Officer Vanderploeg that Cherrone had hit her, taken her cell phone, threatened to slash her tires, and left the residence carrying a knife,[2] and Officer Vanderploeg observed both that her tires had been slashed and that the home was "in shambles." (Dkt. 73, ¶¶ 12–13). He brought Dalton to the police station to give a statement and radioed for assistance locating Cherrone. (Dkt. 73, ¶ 12–13). Sgt. Allbert drove to 616 West Avenue to photograph the scene of the altercation and then searched for Cherrone in the area without success. (Dkt. 73, ¶ 15).

Meanwhile, Cherrone drove to the home of a friend, Mikala Shear ("Shear"), and spent several hours with her. (Dkt. 73, ¶ 16). After Cherrone left Shear's, Officer Borzick arrived at Shear's home and informed her that he was looking for Cherrone. (Dkt. 73, ¶ 21). Shear called Cherrone and told Cherrone that if the police were looking for him, he should turn himself in. (Dkt. 73, ¶ 24). She then handed her phone

---

has considered both the underlying statement of material fact and the corresponding admission or denial.

[2] Cherrone testified that he did not slash Dalton's tires and that at no point that evening was he carrying a knife. (Dkt. 76, ¶ 77–78). However, it is undisputed that Dalton *told* the Officers Plaintiff was carrying a knife. (Dkt. 73, ¶¶ 12–13).

to Officer Borzick, who asked Cherrone where he was. Cherrone responded "fuck off" and hung up. (Dkt. 73, ¶¶ 23–25).[3]

Around 11:30 PM Cherrone returned to 616 West Avenue. (Dkt. 73, ¶ 19).[4] On the way into the apartment he ran into a friend, Bryan Pratt, and invited him inside to smoke marijuana. (Dkt. 73, ¶ 20). Later that night at around 1:00 AM, Sgt. Allbert drove past 616 West Avenue and saw that Cherrone had returned. (Dkt. 73, ¶ 26). He radioed for assistance and waited in the yard until Officer Borzick and Officer Vanderploeg arrived. (Dkt. 73, ¶ 28). Dalton was accompanying them. *Id*. Sgt. Allbert saw that Dalton's tires had been slashed. (Dkt. 73, ¶ 36). Dalton, whose name appears on the lease, gave the Officers permission to enter the home. (Dkt. 73, ¶ 30).

Before entering, Sgt. Allbert announced his presence and that he was a Morris police officer. He instructed Cherrone to come out. (Dkt. 73, ¶ 31). Cherrone was asleep in a bedroom, but Pratt woke him and told him that police were banging on the door. (Dkt. 73, ¶ 33). Cherrone, dressed in only his underwear, was startled and afraid. (Dkt. 76, ¶ 71). Cherrone testified that he believed the Officers might have come to help Dalton retrieve her possessions. (Dkt. 76, ¶ 80). But he also admitted

---

[3] The parties dispute whether Cherrone was aware that Officer Borzick was a police officer or that the police were looking for him when he made these remarks. (Dkt. 73, ¶¶ 23–25; Dkt. 76, ¶ 69). Cherrone testified that he believed Officer Borzick was Shear's brother playing a prank on him. *Id*. Viewing the facts in the light most favorable to Cherrone, the non-moving party, the Court assumes that he was unaware at the time of this phone call that he was speaking to an officer or that officers were looking for him. However, nothing in the record suggests that *Officer Borzick* was aware that Cherrone did not believe he had been asked by an officer to turn himself in.

[4] Cherrone denies drinking alcohol with Shear, while the Defendants say that he consumed four beers. (Dkt. 73, ¶ 17). The Defendants say Cherrone and Shear got into an argument, but Cherrone denies that an argument took plays. (Dkt. 73, ¶ 18). These factors are not material to a determination of whether excessive force was used.

that he blocked the bedroom door with a chair to avoid being arrested. (Dkt. 73, ¶ 38). Both men hid in the bedroom, which had one window. (Dkt. 73, ¶¶ 34, 37).

Sgt. Allbert and Officer Borzick entered the home after announcing their presence, first checking the basement and then beginning to search the rest of the home. (Dkt. 73, ¶ 32). They found the door to the bedroom would not open, and joined by Officer Cory, ordered Cherrone through the door: "Doug, we know you are in there, you need to come out." (Dkt. 73, ¶ 40). Officer Borzick also told Cherrone to "come the fuck out." (Dkt. 76, ¶ 72). Cherrone at first refused, saying instead that he would lay on the ground. (Dkt. 73, ¶ 43). He repeatedly told the Officers that his hands were on his head, that he was laying down, and that he was giving himself up. (Dkt. 76, ¶ 73). He also asked whether Sgt. Allbert was present (Sgt. Allbert responded in the affirmative) because he was familiar with him from prior encounters. (Dkt. 76, ¶ 82).

The Officers testified that they considered Cherrone a threat to their safety because of his non-compliance and because they had been information that he had a knife. (Dkt. 73, ¶ 45). This standoff lasted between one and four minutes, then Cherrone began to open the door. (Dkt. 73, ¶¶ 44, 47). As Cherrone pulled it inwards Officer Bozick simultaneously pushed on the door, reached around it, and grabbed him. (Dkt. 73, ¶¶ 48–49).

As Officer Borzick pulled Cherrone through the doorway he held his left shoulder, yanking his body into the air so that it was horizontal and then slammed him onto the ground. (Dkt. 73, ¶ 53). Cherrone's right shoulder made contact with the ground first, and it was later determined that his right proximal humerus was

5

fractured by the impact. (Dkt. 73, ¶¶ 55, 61). Officer Borzick held Cherrone on the ground by putting one knee on his back. (Dkt. 73, ¶ 56). He also told Cherrone that he "was a woman beater and this is what [he] get[s]." (Dkt. 76, ¶ 73). When asked to put his hands behind his back Cherrone told the Officers that his arm was injured and he couldn't move it. (Dkt. 76, ¶ 74). Officer Borzick responded "come on, you pussy, you can do it" then pulled his arms behind him and handcuffed him. (Dkt. 73, ¶ 56; Dkt. 76, ¶ 74).

During this altercation, Sgt. Allbert was standing about twenty feet from Officer Borzick. (Dkt. 73, ¶ 55). He did not hear Officer Borzick give any verbal warning that he was about to use force, and Sgt. Allbert testified that he had been surprised by his fellow officer's use of force. (Dkt. 73, ¶ 54). Officer Vanderploeg was in the yard monitoring the bedroom window, and although Officer Cory was in the house, he did not use force to subdue Cherrone. (Dkt. 73, ¶ 58).

Cherrone testified that while transporting him from the bedroom, Officer Borzick "was kind of just pushing [him] around." (Dkt. 76, ¶ 75). He was taken to Grundy County Jail and charged with felony domestic battery. (Dkt. 73, ¶ 59). After his release, he went to the local hospital that diagnosed his fracture. (Dkt. 73, ¶ 60). A few months later on January 23, 2018, Cherrone had surgery to repair his fractured shoulder. (Dkt. 73, ¶ 62). Cherrone also received physical therapy for several months after this incident for unspecified back injuries and pain, although the record suggests that some of his back problems may have been preexisting. (Dkt. 73, ¶¶ 63–64).

6

## ANALYSIS

### I. Excessive Use of Force

#### A. Officer Cory and Sgt. Allbert

It is well established that "a plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008). Cherrone concedes that only Officer Borzick used any force against him, so his excessive force claims against Officer Cory and Sgt. Allbert are dismissed with prejudice.

Cherrone argues that Sgt. Allbert failed to intervene to protect him. (Dkt. 1, ¶ 22). However, Cerrone acknowledges that Sgt. Allbert was standing twenty feet from the bedroom when Officer Borzick grabbed him, that Sgt. Allbert was surprised by Officer Borzick's use of force, that Cerrone was thrown to the ground instantaneously, and that he was handcuffed in a matter of seconds. So even assuming Officer Borzick's actions amounted to a violation of his rights, Cherrone has failed to establish that Sgt. Allbert had a realistic opportunity to prevent those actions. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (officers can be liable under §1983 for "failure to intervene" if they have "a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so.").

Moreover, Cherrone does not raise any arguments in his responsive brief either to support his claim that Sgt. Allbert failed to intervene to protect him, or that either Sgt. Allbert or Officer Cory harmed him. Arguments not preserved are waived, and

all claims against Sgt. Allbert and Officer Cory are dismissed with prejudice. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466–67 (7th Cir. 2010).

**B. Officer Borzick**

Officer Borzick argues both that the force he used to arrest Cherrone was constitutional and that he is entitled to qualified immunity.

*1. Objectively Reasonable Force*

A police officer has the right to use physical force when making an arrest, but that use of force must comport with the requirements of the Fourth Amendment. *See Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009). The Fourth Amendment requires that the level of force used be "objectively reasonable," which is to say, "reasonably necessary to effectuate the arrest." *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009). When the material facts are undisputed "the reasonableness of the [officer's use of] force [is] a legal issue" appropriate for resolution at summary judgment. *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010) (citing *Bell v. Irwin*, 321 F.3d 637 (7th Cir.2003). But the analysis is fact-intensive and depends on "the circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989). While weighing the objective reasonableness of an act of force, the Court considers the facts "as they would have appeared to a reasonable officer on the scene" at the time of that act. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 685 (7th Cir. 2007). Courts "must also bear in mind when considering the totality of the circumstances that police officers are often forced to make split-second judgments— in circumstances that are tense, uncertain, and rapidly evolving—about the amount

of force that is necessary in a particular situation." *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519–20 (7th Cir. 2012) (citing *Graham*, 490 U.S. at 397).

The parties agree that Courts consider three factors when determining whether an act of force was objectively reasonable: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Stainback*, 569 F.3d at 772 (7th Cir. 2009) (quoting *Graham*, 490 U.S. at 395).

### i. *Severity of Crime*

Cherrone was arrested for hitting Dalton in the head during a domestic dispute. He was charged with a class A misdemeanor, "Domestic Battery" (punishable by up to 1 year in jail). Because of his prior Domestic Battery conviction, Cherrone was charged with felony domestic battery.[5] It is well-established that domestic battery calls are highly volatile for police officers and are serious offenses. However, in this instance, the domestic battery was hours in the past at the time of the arrest.

### ii. *Threat to Safety*

Far more relevant to this Court's analysis is the potential threat that Cherrone posed to the officers at the time of his arrest. He was, as the Court noted above, wanted for a violent crime that had allegedly taken place earlier that evening. He had been combative with Officer Borzick over the phone earlier in the night when

---

[5] Felony Domestic Battery is a class 4 felony, (punishable by up to 3 years in the department of corrections). 720 ILCS 5/12-3.2.

instructed to turn himself in.[6] The officers had been told by Dalton that Cherrone was carrying a knife and threatening to slash her tires when he left her home earlier in the evening. That warning was corroborated when the officers observed that Dalton's tires had indeed been slashed. A reasonable officer in Officer Borzick's position would have ample reason to believe Cherrone was armed with a knife when he opened the door to come out of the bedroom.

### iii. *Resisting or Evading*

The third factor, whether the suspect is resisting arrest or trying to evade capture, is a closer call. Cherrone argues that the standoff lasted only one to four minutes, and that at the time Officer Borzick used force against him he had already told the officers he was surrendering. He says that his statements during the standoff (asking if Sgt. Allbert, whom he trusted, was present and telling the officers he was going to lay down on the bedroom floor) while not compliant with the officers' orders, should have been understood by the officers as an effort to deescalate. He also argues that with Officer Vanderploeg in the yard observing the bedroom window and three officers in the house, he was not a flight risk.

The Defendants point out that from the perspective of a reasonable officer in Officer Borzick's position, Cherrone had been purposefully evading capture since their phone call earlier in the evening, when he refused to turn himself in. The Defendants also point out that Cherrone had barricaded himself into his bedroom for

---

[6] The fact that Cherrone believed this phone call was a prank is irrelevant. The Court views the facts from the perspective of a reasonable officer in Officer Borzick's position. Officer Borzick knew Cherrone had (1) refused to turn himself in; and (2) been belligerent.

the express purpose of continuing to avoid arrest, had been non-compliant while in the bedroom, and may very well have attempted to flee when he opened the bedroom door.

The Court finds that it was reasonable for Officer Borzick to believe that Cherrone had not truly surrendered when he opened the door. The Seventh Circuit has held that although surrender may make force unnecessary under certain circumstances, "[n]o law that we know of require[s] [an officer] to take [the arrestee's] apparent surrender at face value," only a "split second after" they stop evading capture. *Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009).

All three of the *Graham* factors weigh in favor of finding Borzick acted objectively reasonably, and the second and third factors weigh heavily in favor of this finding. The caselaw cited by the parties does not require a contrary result. In the most relevant case, *Johnson v. Rogers*, the plaintiff, who had drunkenly threatened employees of a rehabilitation center, was handcuffed and seated by a police cruiser. 944 F.3d 966, 969 (7th Cir. 2019). He repeatedly attempted to stand up and walk away. A police officer kicked him in the legs in order to execute a "takedown," and the plaintiff broke his leg in the fall. The Seventh Circuit affirmed the District Court's grant of summary judgment to the officers, saying that "[m]any decisions hold that there is no clearly established rule forbidding a clean takedown to end mild resistance of the sort that Johnson displayed." *Id.* (citing cases). Cherrone was suspected of a more serious crime, had made a more concerted effort to resist arrest, and posed a far greater threat to officer safety (both because he was believed to be carrying a knife

11

and because unlike the plaintiff in *Johnson*, he was not handcuffed). Cherrone attempts to distinguish this case, saying that while the plaintiff in *Johnson* was walking away, Cherrone was surrendering. This is unpersuasive, because it addresses only one of the three *Graham* factors. Moreover, given Cherrone's behavior up to that point, a reasonable officer could have interpreted Cherrone's decision to exit the bedroom as an attempt to escape, rather than a bona fide surrender.

In another case, *Dawson v. Brown*, the Seventh Circuit affirmed summary judgment in favor of a police officer who tackled an arrestee's father when the father repeatedly approached his son's would-be arresting officers. 803 F.3d 829, 834 (7th Cir. 2015). Cherrone again attempts to distinguish this case, saying that in *Dawson* the son was violently resisting arrest while he was at most passively resisting arrest. But the plaintiff in *Dawson* was the father not the son. He was not suspected of any crime or endangering any officers. He was however preventing the officers from doing their job. Cherrone's behavior was far more threatening than that presented in *Dawson*.

Finally, Cherrone argues that the injury he suffered is evidence that Officer Borzick used too much force. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (citing *Graham*, 490 U.S. at 396) (extent of injury relevant in excessive force claim brought by pretrial detainees under the Fourteenth Amendment). It may be relevant, but "to survive summary judgment, a plaintiff must do more than point to his injury or its seriousness; he must also identify the specific unreasonable conduct that caused his or her injuries." *Stainback v. Dixon*, 569 F.3d 767, 773 n.7 (7th Cir. 2009). More

recently, the Seventh Circuit has held that Courts should focus on "whether the force was reasonable, not whether things turned out badly." *Johnson*, 944 F.3d at 969. It added that "[a]ny takedown can go awry," but "if the officers use steps reasonably likely to effect a clean takedown, an injury does not lead to liability." Because the three *Graham* factors weigh in the Defendants' favors, the fact that Cherrone's shoulder was fractured is not sufficient to demonstrate a Fourth Amendment violation.

## 2. Qualified Immunity

Police officers are entitled to qualified immunity "if a reasonable officer could have believed that the action taken was lawful, in light of clearly established law and the information the officer possessed at the time. *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 527–28 (7th Cir. 2012). Courts generally perform a two-step analysis, determining (1) whether a right was violated; and (2) whether the right was clearly established at the time of the challenged conduct. *See Pearson v. Callahan*, 555 U.S. 223 (2009). Assuming, counterfactually, that Officer Borzick violated a Cherrone's rights, Cherrone does not point to any case law demonstrating that this right was clearly established in 2018. For a right to be "clearly established[,] existing precedent must have placed the statutory or constitutional question [. . .] beyond debate." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014).

Cherrone is correct that "a case directly on point" is not required, *Ashcroft v. al Kidd*, 563 U.S. 731, 741 (2011), but in order to be clearly established a right must be "defined with specificity." *Weiland v. Loomis*, 938 F.3d 917, 919 (7th Cir. 2019)

13

(citing various Supreme Court opinions in which lower courts were reversed for defining rights too broadly when holding that they were clearly established for purposes of qualified immunity). The need for a case with substantially similar facts is particularly important when Courts are considering qualified immunity in the Fourth Amendment context. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018).

Cherrone cites various cases for the general proposition that "force used to effect arrest is reasonable only when exercised in proportion to the threat posed." *See Phillips v. Community Insurance Corporation*, 678 F.3d 513 (7th Cir. 2012); *see also Cyrus v. Town of Mukwonago*, 624 F.3d 856 (7th Cir. 2010). But these cases do not establish with sufficient specificity that in 2018 (or today for that matter) tackling or "taking down" a non-compliant suspect was clearly unconstitutional.

## II. Battery

In light of this finding, the Court also dismisses Cherrone's state law battery claims with prejudice. Many case hold that the Illinois state Tort Immunity law requires "willful and wanton" conduct in order to hold a public employee liable for battery. *See* 745 ILCS 10/2-202. *See, e.g., Kapernekas v. Vill. of Stone Park*, 2019 WL 1543261, at *6 (N.D. Ill. Apr. 9, 2019) (citing *Horton v. Pobjecky*, 883 F.3d 941, 954 (7th Cir. 2018), *Gill v. Village of Melrose Park*, 35 F. Supp. 3d 956, 967–68 (N.D. Ill. 2014), and *Rebolar ex rel. Rebolar v. City of Chicago, Ill.*, 897 F. Supp. 2d 723, 741–42 (N.D. Ill. 2012). Since the Court finds that Borzick's conduct was objectively reasonable and Allbert and Cory were not personally involved in the conduct,

Cherrone cannot possibly establish "willful and wanton" conduct by them. Moreover, he does not respond to this argument in his response brief, so any objection by him is waived. *See Bonte*, 624 F.3d at 466–67.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 66) is granted. The Clerk is directed to enter judgment in Defendants' favor and against Plaintiff, and to terminate the case.

E N T E R:

Dated: March 29, 2021

_____
MARY M. ROWLAND
United States District Judge